## THE WEST BROOKLYN.[1]

### BROWN et al. v. THE WEST BROOKLYN.

*(District Court, S. D. New York. January 21, 1891.)*

COLLISION—CROSSING COURSES—FERRY-BOAT AND TUG—ENTERING SLIP.

The steam-tug Garrett was lying at pier 4, East river, head up stream, and inside of another tug. Receiving orders for Harlem, she backed down stream to get around the stern of the tug lying along-side. At this time, the ferry-boat West Brooklyn was approaching her slip between piers 2 and 3. She blew two whistles to the tug, and kept on, supposing that the tug would go ahead in time to avoid her. Through some carelessness on the part of the tug. she did not go ahead, and her stern struck the paddle-wheel of the ferry-boat after the latter was half-way in her slip and when the wheel was motionless. *Held*, that the tug was solely in fault for the collision.

In Admiralty. Suit for damage by collision.

*Carpenter & Mosher*, for libelant.

*Burrill, Zabriskie & Burrill*, for claimant.

BROWN, J. On the 7th day of September, 1889, as the ferry-boat West Brooklyn was entering her slip between piers 2 and 3, East river, the libelant's tug R. S. Garrett, in backing down from pier 4, struck the starboard paddle-wheel of the steamer, and received considerable damage, for which the above action was brought. I am satisfied that at the time of the collision the wheels of the ferry-boat were stopped, and that one-half her length was within her slip, and inside the exterior line of pier 3. The tide was slack. The Garrett had been moored with her head up stream, along-side the end of pier 4. Another tug, the Hoyt, with her stern projecting about 30 feet behind the Garrett, and angling outwards, was moored outside of and along-side the Garrett. Under orders for Harlem, the Garrett cast off and backed down for the purpose of getting out into the river, around the stern of the Hoyt, and, in doing so, she ran against the wheel of the West Brooklyn, as above stated. She was at that time probably from 15 to 30 feet below the line of pier 3. Pier 4 was used as the head-quarters for tugs in that vicinity, and, in their maneuvers in coming in and going out, they had no right unnecessarily to embarrass ferry-boats leaving or entering the slip below. There was no need in this case for the Garrett, a small tug, easily and quickly handled, to cross the well-known path of the ferry-boat in entering her slip. She evidently paid no attention to the West Brooklyn, which was approaching near her slip, with her lights set, and easily recognizable. I do not imagine that the pilot intended to back into her water. How it happened that he did so is not altogether certain from the evidence, and it is not necessary to determine whether it arose from his own failure seasonably to ring ahead, or from the failure of the engineer to respond to the signals, of which there is some direct and very positive evidence. Either leaves the tug alike chargeable with blame.

[1] Report by Edward G. Benedict, Esq., of the New York bar.

Had there been in fact any need of the Garrett's going below pier 3 in order to get out into the river, it would have been her duty, as the ferry-boat was approaching near, to wait until the ferry-boat had gone into her slip. *The Nereus*, 23 Fed. Rep. 448; *The John S. Darcy*, 29 Fed. Rep. 644; affirmed, 38 Fed. Rep. 619; *The Greenpoint*, 31 Fed. Rep. 231.

I think the ferry-boat must be held free from blame. There is a wide difference in the testimony as to the distance the ferry-boat was from her slip when the Garrett was first seen, or might have been seen, backing down. But these differences seem to me of little or no consequence in this case. The circumstances were altogether peculiar, and the usual rules of navigation do not apply. The tug was not navigating in the usual way down river and across the slip. She was merely engaged in maneuvering to go out from her dock, an ordinary occurrence there, in doing which she had no right to obstruct the ferry-boat. There was no need of her doing so, and there was no reason for the pilot to suppose that she would do so. The pilot of the ferry-boat, when at some distance, more or less, outside of her slip, saw the tug moving down, and gave two blasts of her whistle. This was a proper measure of precaution, but was not a signal of danger, or a recognition of any danger; nor do I think the pilot of the ferry-boat should then have apprehended the least danger of collision, so as to require him to stop and back. The tug at that time was not below pier 3. He had the right to assume that the tug would stop in time, as she could easily have done. In the ordinary maneuvering of such tugs, necessarily within narrow limits in the crowded spaces about our wharves, precisely such conditions are constantly arising, and it is a matter of daily observation that tugs so easily handled are accustomed to move about with safety one way and another, avoiding collision within small spaces, with almost as much precision and certainty as a person threading our crowded streets avoids contacts with vehicles or with other persons. The circumstance, moreover, that the bow of the ferry-boat had passed the stern of the Garrett about 130 feet at the time of collision is conclusive to my mind that the Garrett had abundant time to get out of the way, had she used ordinary caution, or ordinary promptness in going ahead, which the ferry-boat had the right to assume she would certainly do. Just before reaching the slip, a danger signal was given, but the ferry-boat could not then avoid the tug, nor could she have avoided collision at all, except by reversing at considerable distance outside of the slip, at a time when the Garrett was not below pier 3, and when the ferry-boat had no reason to suppose that she was intending to go below it, or that there was any danger of collision. All the cases, in which the boat having the right of way has been held to blame for not reversing, have proceeded upon the ground that, at the time when it was held she ought to have reversed, she had plain and clear notice that the other boat intended to cross her path, or could not get out of her way. *The Fanwood*, 28 Fed. Rep. 373; *The Columbia*, 27 Fed. Rep. 704. I do not think that the ferry-boat in this case is chargeable with any such notice or reasonable inference, but quite the con-

trary. It was only when in close proximity and *in extremis* that the ferry-boat had any reason to suppose the tug would not get out of the way, and then, as well as when the bows of the ferry-boat has passed the stern of the tug, the question of reversing or not reversing was one of so doubtful expediency that I cannot hold the judgment of the pilot of the ferry-boat, whether right or wrong, a fault. *The Maggie J. Smith*, 123 U. S. 349, 355, 8 Sup. Ct. Rep. 159. There are some regrettable circumstances connected with the defense of the cause, but these do not affect the merits or the grounds of decision above specified, upon which I feel constrained to hold the tug alone to blame for her injuries. The libel is dismissed, with costs.